The court will proceed to the sixth case, Terry v. Gary Community School Corporation. Mr. McCain. Good morning, your honors. May it please the court. Gloria Terry started with the Gary Community School Corporation in August 1980 as a special education teacher. She enjoyed an exemplary 35 year career. And up until the last year of her employment, she was at a prison all the way up to the ranks of elementary school principal. She received a demotion from elementary school principal to assistant principal in the 2014-15 school year. Each of Mrs. Terry's evaluations were rated either effective or highly effective. In fact, her most recent performance evaluation before she was terminated was rated highly effective. The record is replete with testimony about Terry's qualifications. Bill Cook, the former HR director, testified that she was one of the district's, quote, sharper principals, end quote. And she, quote, did her job very well. We're on appeal this day on three issues. The first is unequal pay, whether the district court erred in granting summary judgment to the defendant for unequal pay. Out of five elementary schools in the city of Gary, only two of them were run by men. One man, Sheldon Kane, had as much or more seniority as Mrs. Terry. But the other, Mr. Roberts, did not. Both men were paid more than $85,986. You say there were five elementary schools? That's correct, Your Honor. I was confused a little bit because there were 10 schools and five of them were closed. Were those all elementary? Yes, there were. Back in the past, there were more elementary schools open. But at the time where she brought her EPA claim, there were five elementary schools open at that time. So of the five, two were principled by men? That is correct. So what about the other two women? What were their pay grades? Is that the record? To my knowledge, Your Honor, I think two of those women were paid at the higher rate, but Mrs. Terry was not. Okay. But I'm looking at that. Those two women were probably paid about the same as the men, right? That is correct. That is correct. But that is not dispositive in an Equal Pay Act claim. As Judge Ripple wrote in his opinion in Cullen v. Indiana University Board of Trustees, the plaintiff makes out a prima facie case if she points to one male doing the same job getting paid more money. The successful plaintiff, after they prove their defense, that's proposed by the defendant. And in this case, the district did not assert any affirmative defenses. First, we look at their answer to the second amended complaint, which is document number 26. They have no affirmative defenses to our EPA claim. Then we look at the motion for summary judgment brief in support, and they don't mention any affirmative defenses substantively. They list them, but they don't substantively argue that they are afforded any of the affirmative defenses. The first time we hear of the fourth and last affirmative defense, which is the factor other than sex, the first time we hear about that is in their reply brief, which is document 98 at pages 7 through 10. When the plaintiff, Mrs. Terry, brought this up on appeal, the defendants didn't even bother to argue that point in their response brief to our appellate brief. So they have had three opportunities to assert this affirmative defense, and they never did. Our argument to the court is that this is waived because they did not properly assert the affirmative defense, even though the district court gave credence to it, they did not bring it to the 2009 salary freeze that the defendants asserted in their reply brief to the motion for summary judgment as the factor other than sex as to why Mrs. Terry was not paid as much as their male counterparts. We believe that that reason is pretextual, and we have several pieces of negative information or negative evidence to prove that. Number one, we had the human resources director, Mr. Cook, testify that if she had received the job at Marquette, which she applied for and was qualified for, she would have received the higher salary. And number two, Dr. Pruitt, the former superintendent of the schools, testified that she realized after the lawsuit was filed that Mrs. Terry's salary was out of alignment, and she said if she had the opportunity, she would do something about it. She did not testify, however, that because of the 2009 salary freeze, she couldn't do anything about it. Her testimony is that she would have if she had known. That's enough to get us to a jury, your honors, on the Equal Pay Act claim. As far as the sex discrimination and the failure to promote, the school district, through its superintendent, suggested Sheldon King, I'm sorry, first suggested Gina Ellison as its principal of Marquette in the 14-15 school year. The board said no, send it back to human resources. Human resources immediately posted the job and said very clearly, in all caps and in bold print, interviews are required. Mrs. Terry, along with four other candidates, applied, I'm sorry, interviewed for the position. Mrs. Terry received the highest rating of all five candidates. That information was given to the superintendent? In the interview. In the interview, correct.  In the interview. That was the only component to the candidacy, is that there was interviews required. There was no other requirement other than you had to meet these certain job specifications. Mrs. Terry was the principal at Brunswick, so she, assumedly, would be able to do that. But the interview was required, and Mrs. Terry got the top rating. The first woman that was suggested for the job, she was ranked four out of five. Even though she got the top rating, the superintendent suggested and recommended a man to fill that spot. Was this argument made to the district court? Pardon me? Did you make this argument in the district court? Oh, yes, your honor. In each and every one of our pleadings, we made that argument. The issue with that, that reason was pretextual for adding Mr. Kane as the principal was, number one, Mr. Kane wasn't first recommended to take this position. Gina Ellison was. Then they say, well, Mr. Kane has familiarity with Marquette Elementary School and experience with the elementary school. Well, Mrs. Ellison did not. She was the former principal of Webster, so that was not the reason. Also, they say, well, Kane was the best candidate. He wasn't a candidate at all. He did not apply for the position. He did not interview for the position, as was required by the school district. And third, the third pretextual reason was that the fact that the school district said interviews were required, that pretextual reason was a lie, because if interviews were required, Mr. Kane could not have been proposed or recommended as the principal. The last claim issue that we have is retaliation. And we show through a temporal proximity that Mrs. Terry's EEOC charge filed in October. She was fired in February of 2015, four months later. One month after receiving her right to sue letter, she was out of there. We have to also show a causal link between the temporal proximity and her termination. We have shown that she had an exemplary career without fault, without blemish, for 35 years prior to that. Now, she received her termination letter when everybody else in the district received their termination letter, right? Mid-February is when everybody got it. Who was going to get one? Yes, there were several other individuals who were also terminated in February 2015, but none of them filed an EEOC charge. I would like to save the rest of my time. I think I've gone into my... You're into rebuttal. I'll let you have two additional minutes. Thank you. Thank you, Mr. McCain. Ms. Coleman. Good afternoon. May it please the court, Tracy Coleman for the Gary Community School Corporation. Your Honor, at the district court level, the undisputed evidence was that the Gary Community School Corporation had to cut 94 teachers. The salaries had to be frozen, and five schools had to be closed. And Ms. Terry, even though she's calling this a demotion, the undisputed evidence is that she was able to keep her salary, was able to keep her benefits. The change was her title. Her school, Brunswick, was an F school. So basically... What's that? Brunswick Elementary was the school she was principal at. No, an F school. F school means that it was failing, that the children were not making adequate progress or passing the test. And so it was considered a failing school. If a school got so many Fs, they would be taken over by the state. So one of her schools, the school that she was principal of, Brunswick, that was one of the five schools that was closed. And her children were taken over to Jefferson Elementary, where she was serving as the assistant principal. Now, when Marquette, the way that principal position became open was because the principal had to go on leave. So Mr. Kane, who was the vice principal, became the acting principal of Marquette. And we're actually in a school corporation where the majority of the administrators are women. But in this instance at Marquette Elementary, you had a male who was the vice principal, the superintendent who has the ultimate discretion of who she wants to be her principal. She made the decision that she was going to make the acting principal, Mr. Kane, the principal. And one of the issues that the district court looked at was that there was nothing for Ms. Terry to show how it was somehow egregious for Mr. Kane to become principal. The other person that they talked about, Mr. Roberts, was the principal at a boys' academy. The only school that she applied for was Marquette. So we would argue that's not necessarily similarly situated because you're dealing with a boys' academy that had grants. She did not make any efforts to become principal of that school. Her focus was on Marquette. A boys' academy only principled by boys, by men? Well, there's no rule for that. It's just that at this time, they had Mr. Roberts who was the principal. No, I don't understand what a boys' academy is. So I guess that's just a curious question, I guess. Right. No problem, Your Honor. And so our position is that there was no discrimination here because every decision wasn't based on her gender. It was neutral. How about this problem with your brother's sister? Well, she was ranked first among the candidates for the Marquette principalship. Well, that was a panel. So what Mr. Cook, who was our human resource director, he would give the top three names. So it wasn't something set up where if you were number one, you were automatically given that position. And the district court looked at that argument, and that's where they said they couldn't see anything that would distinguish her career, her record, which would show that somehow the district did something wrong by putting Mr. Kane in that position. But Kane was never interviewed, right? He wasn't interviewed. Why not? It was, once again, he was vice principal. This was one you almost could consider an emergency situation with a principal who went on leave. And so trying to find somebody to fill that position at Marquette. So it wasn't a normal circumstance. Now, counsel suggests that the selection of the Marquette principal was entirely on the interview basis. No, Your Honor. What in the record rebutts that? It would be actually the testimony of his client, Ms. Terry, and also the superintendent. That they recognized that in the end, it's the superintendent of the school corporation who has the ultimate decision of who she wants to be in that position. And then the board will have to approve it. There was one position. Is there any evidence that the superintendent looked at evidence other than the interview? Yes, as far as the superintendent's deposition. But how she came up with the decision to put Mr. Kane there. And that's where her thought process is, here's someone who's already there, making him acting principal, that it was a logical switch to keep stability for those children when they lost their regular principal to have somebody who was already there. When you say already there, is that based on knowledge of the students and the board? And maybe their parents? Yes. He was already serving as vice principal at Marquette. Could we look at the Equal Pay Act claim for a moment here? And counsel suggests that the salary freeze was really pretextual. And cites the testimony of, I believe it was the superintendent who said she didn't know about the differential, but she would have done something about it if she did know. Your Honor, the testimony that he's referring to is, I believe, what her discussion with the salary freeze. But here we have a superintendent coming in with a financial crisis. And this is where the reason and the thought making isn't based on race, sex, or any type of discrimination. Basically, you have a school court that's in a financial crisis that she has to close these schools. There's no ability to raise people's salaries, whether you want it to or not. But she said something about that she would have done something about it if she had known about it. I believe the testimony that he's referring to, as far as Ms. Kane, it isn't dealing with anything discriminatory. It's just that you're frozen at that salary. In other words, are you indicating that the principal would have done something if the freeze had not been in effect? Or she would have done something prior to the freeze had she known about it? Well, Your Honor, if there wasn't a freeze, she would have had discretion as far as raises, as far as how she paid people. But unfortunately, due to the financial crisis, there was nothing that she can do as far as raises or things of that nature. And so the testimony from Ms. Terry, from the human resource director, from the superintendent, those salaries were frozen. They couldn't change. And even there's been testimony that Mr. Cook, who was the human resource director, indicated if she had gotten a job at Marquette, she would have had gotten a higher salary because that position was frozen at that salary. And so that's where Mr. Kane was able to get to that higher salary because that was the salary that was frozen for that position. And so with their equal pay arguments, the district court pointed that Terry kind of claims that the principal at Marquette was paid more because he was a man, but she neither disputes the existence of the salary freeze nor provides evidence as to the sex of the Marquette principal at the time of the freeze. And then the court points out that prior to Mr. Kane, that it was a female who was the principal at Marquette. So the undisputed evidence is those salaries were frozen. She testified to it. The superintendent testified to it. Mr. Cook testified to it. It wasn't because of anyone's race or age or sex. It was because you have a school corporation and a financial crisis that has to close a lot of schools and has to keep that budget stable. And the way they did that was to freeze the salary. When Mr. Kane was moved up, is that correct? Yes. Now, did he get the same salary as his predecessor did? Yes. Now, was he replaced? Mr. Kane. Was he replaced with an assistant vice principal? Ms. Terry ended up going to Marquette as the vice principal. So she ended up doing what Mr. Kane used to do. I see. And in her testimony, she indicated Dr. Pruitt treated her professional. No one did anything to make her uncomfortable. And she indicated Mr. Kane was actually a good principal. So as far as the people performing their duties to help the children, everyone did what they were supposed to do. But just because she got a change in title, which she considers a demotion, the court didn't. The district court didn't. She kept the same pay. She kept the same benefits. And then she retired. There were people who lost their jobs. She was not one of them. She kept the money. She kept the benefits. She went from a principal title to an assistant principal title, but was still the same with responsibilities that were actually less. Because now you're the vice principal instead of the principal, which everything falls on Mr. Kane. So what we were asked is that this court uphold the district court's decision. There was a lot of discovery and a lot of analysis. And in the end, this was a financial crisis. And decisions had to be made with closing schools. Unfortunately, principals who've been there for a long time, no one likes to deal with the reality of this is what happens in a financial crisis. And so we were asked that the decision of the district court be upheld. Thank you. Thank you, Ms. Goldman. Mr. Kane, you may have two minutes. Thank you, Your Honors. I'd like to point to Dr. Pruitt's testimony on page 13 of my opening brief. The superintendent testified, however, that Mrs. Terry's salary was out of alignment with her male counterparts. And if the superintendent knew about it before plaintiff's suit, then she would have made efforts to correct it. And that's found on document number 97-3 at page 16, lines 1 through 18. Again, she did not... I'm sorry. This $1,600 difference, or $1,600 and change, is that true for all the other principals, female versus male, $1,600 difference? Just Mrs. Terry. Just the plaintiff in this case. She was the other two... Of the existing superintendents before the closing of the schools, you're saying all the males made $85,900 or so, and the others made $84,308 or something? That is correct, Your Honor. Except Mrs. Terry was the lowest paid female elementary school principal. Her two comparators were... There were two other women, right? That is correct. And they were making the $85,986. Okay. So of the five principals, she was the only one with the differential of $1,600 and plus. That is correct. And she is not required to prove that this is happening to all the women that she works with, just her as an individual plaintiff. Judge Ripple, you asked the question, why wasn't Sheldon Kane interviewed? Quite simply, because he did not even apply for the position. That can lead us to conclude that he didn't want the job, or else he would have applied for it. Gina Ellison applied for it. Mrs. Terry applied for it. And three other candidates applied for it. Mr. Kane, but you've got a situation where the superintendent has in place a vice principal who's been there for, what, four or five years? You wouldn't think that's within the discretion to consider that candidate knowledgeable to the superintendent? I believe that's at her discretion to factor that into her decision, Your Honor. But why didn't she choose Sheldon Kane first? If he had the experience there, if he had the familiarity with Marquette, why wasn't she his first pick? Are you suggesting the interview process was entirely protectional for all of them? All the interviewees? Can you repeat? Are you suggesting that the whole interview process was pretextual? Oh, absolutely, Your Honor, because apparently it didn't matter. If you didn't even apply for the job or interview for the job, you could still get it, if you were a man. So that's why we consider that pretextual. That's why that should go to a jury, because you have on an official document from HR, interviews are required, and then you give the job to a person who neither applied nor interviewed. And lastly, Your Honor, about demotion. The court has said that even if you keep your same salary and same benefits, you can be demoted if there's a change in title, a change in prestige, and we fully brief that argument in our brief. In conclusion, Your Honor, Your Honors, we ask that you reverse and remand this case to district court to give the jury an opportunity to decide. Our only position at this juncture is to raise the reasonable inference to suggest that the reasons given by the defendants are pretextual. We've done that, amply so, and thus we deserve to have this case heard by a jury. Thank you for your attention. Thank you, Mr. McCain. Thank you, Ms. Goldman. The case is taken under advisement, and the court will stand in recess.